COMMONWEALTH *vs.* MARK ANTHONY.

Suffolk. February 5, 2008. - April 2, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Probable cause, Warrant, Affidavit. *Constitutional Law,* Search and seizure. *Probable Cause. Obscenity,* Child pornography.

A Superior Court judge erred in allowing a criminal defendant's motion to suppress evidence that police seized, pursuant to two search warrants, from a storage locker under the defendant's control and from two laptop computers retrieved from a computer repair shop, where the lengthy and detailed affidavits supporting the warrants, which established a nexus between the criminal activity (possession of child pornography) described in the warrants and the places (or items) to be searched, provided sufficient probable cause for the warrants to issue. [68-73]

INDICTMENTS found and returned in the Superior Court Department on January 11, 2005.

A pretrial motion to suppress evidence was heard by *Kenneth J. Fishman,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*Kenneth I. Seiger* for the defendant.

*Christina E. Miller,* Assistant District Attorney (*Christopher Kelly,* Assistant District Attorney, with her) for the Commonwealth.

SPINA, J. The defendant, Mark Anthony, was charged in three indictments with possession of child pornography in violation of G. L. c. 272, § 29C.[1] He filed a consolidated motion to suppress evidence seized pursuant to two search warrants, which

---

[1]General Laws c. 272, § 29C, states, in pertinent part:

included: (1) the contents of a storage locker rented by the defendant; and (2) electronic data on items from the storage locker (seven computer hard drives, one cellular telephone with camera attachment, and five floppy disks), on two laptop computers from a computer repair shop, and on one desktop hard drive from the Boston Public Library. A judge in the Superior Court allowed the defendant's motion to suppress evidence seized from the storage locker and the computer repair shop, and he denied the defendant's motion to suppress evidence seized from the Boston Public Library computer. A single justice of this court granted the Commonwealth leave to pursue an interlocutory appeal in the Appeals Court. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). We then transferred the case here on our own motion. At issue is whether the warrants were supported by probable cause, particularly a nexus between the criminal article or activity described in the affidavits and the places to be searched. Because we conclude that the affidavits provided sufficient probable cause for the warrants to issue, we now reverse that portion of the motion judge's order that allowed the defendant's motion to suppress evidence seized from the storage locker and the computer repair shop.

1. *Background.* The judge found the following facts, based on the search warrant affidavits of Sergeant Detective John Donovan of the Boston police department's sexual assault unit. On August 30, 2004, Sergeant Ronald W. Riggin of the Maryland State police technical investigation section contacted Detective Donovan, requesting assistance with an ongoing investigation. Sergeant Riggin informed Detective Donovan that, for several months, a male suspect had been communicating with a twelve year old Maryland girl (juvenile) by telephone and electronic

"Whoever knowingly purchases or possesses a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is: . . . (vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child; with knowledge of the nature or content thereof shall be punished by imprisonment . . . or by a fine . . . ."

mail (e-mail), and that the suspect was believed to live in or near Boston. Sergeant Riggin provided Detective Donovan with a report detailing the investigation by the Maryland State police.

On August 24, 2004, Sergeant Riggin had interviewed the juvenile, who told him that she had engaged in an online relationship with the suspect, and that he had solicited her for sex and had threatened her into sending him sexually explicit photographs of herself.[2] The juvenile stated that she knew the suspect as "Mark," and that he used the screen names "kidmaker4u@hotmail" and "kidmaker2004@yahoo." She reported to Sergeant Riggin that "Mark" had called her cellular telephone and that the telephone had saved the number. The juvenile also divulged that she had sent an explicit picture of herself to "Mark," and that she had planned to meet him for a sexual encounter.

Sergeant Riggin received permission from the juvenile to take control of her e-mail account, and the juvenile's computer was turned over to the Maryland State police computer forensic laboratory for analysis. The examination of the computer yielded numerous nude images of the juvenile, but the forensic examiner was unable to determine whether such images had been transmitted to "Mark."

Around this same time, Sergeant Riggin discovered that the telephone number used by "Mark" to contact the juvenile was a prepaid telephone card number distributed by the Dollar Phone Company. He subpoenaed the company's records and learned that the calling card had been used on several occasions to call the juvenile's cellular telephone. The calls originated from a public telephone in or near the Boston Public Library, except for one call that originated from the home of Michael Hutchins in Chelsea.

On August 27, 2004, Sergeant Riggin accessed the juvenile's e-mail account and discovered fourteen e-mails from "kidmaker2004@yahoo," in which "Mark" expressed his desire to meet the juvenile. At one point during the day, while logged

---

[2] This interview took place with the permission of the juvenile's mother. The mother learned about her daughter's online relationship with the suspect when one of the juvenile's friends became worried about the relationship and told the juvenile's mother about it.

on to the juvenile's account, Sergeant Riggin received another e-mail sent by "kidmaker2004@yahoo." He checked the Internet protocol address associated with these e-mails and traced it back to computers at the Boston Public Library.[3] Sergeant Riggin then subpoenaed log-in records for the suspect's two "kidmaker" e-mail accounts. The records traced the Internet protocol addresses to computers at the Boston Public Library and to computers at a library in Boston administered by the Christian Science Publishing Society (CSPC). Sergeant Riggin subpoenaed log-in records from CSPC in an effort to identify who had logged on to the computer at the library using either of the "kidmaker" screen names. The information received in response to the subpoena indicated that the defendant, with an address listed as "109 Saint Stephen St. in Boston," had used the "kidmaker" accounts from the CSPC library. In addition, Sergeant Riggin received key stroke logs from the CSPC library that showed that the defendant had requested that the juvenile send him sexually explicit pictures of herself. Sergeant Riggin communicated all of this information to Detective Donovan for further investigation.[4]

As he began researching the defendant's background, Detective Donovan learned that in June, 2001, the defendant was indicted in Arizona on charges of sexual exploitation of a minor, luring a minor for sex, and assault. He had been found in possession of child pornography and had conversed on the Internet with a minor about sex. The defendant pleaded guilty to the charges and was sentenced to time served of 320 days, followed by lifetime probation, the terms of which required the defendant to register as a sex offender and, as acknowledged by the de-

---

[3]An Internet protocol address is a unique number assigned to any device when connected to the Internet.

[4]In his affidavit, Detective Donovan stated that during the course of the investigation by the Maryland State police, Sergeant Riggin discovered that the suspect also used the screen name "goodlookingguyis@yahoo.com." According to the information from Sergeant Riggin, the suspect had an Internet profile under this screen name where he listed the following Web sites as his "favorites": "www.youngergirlsforolderguys.com"; "www.funstuff.com"; "www.jackmeoff.com"; "www.youngergirlswitholderguys.com"; "www.preteengirls.com"; "www.hornyveryyounggirls.com"; "www.letsdoit.com"; "www.momsanddaughters.com"; "www.youngergirls.com"; "www.older4youngersex.com"; and "www.3sums.com."

fendant, to refrain from using a computer. Detective Donovan further learned that the defendant was wanted in Arizona on a probation violation, and that he had not registered in Massachusetts as a sex offender. On receipt of an application for a criminal complaint from Detective Donovan, a judge in the Boston Municipal Court issued a warrant for the defendant's arrest.

On September 25, 2004, Sergeant Richard Hunter of the Massachusetts State police located the defendant at the Boston Public Library, and he was arrested. At the time of his arrest, the defendant was using a desktop computer on the second floor, and Sergeant Hunter observed sexually explicit language on the screen but was unable to view to whom the language was directed. The defendant was transported to the police station, and the desktop computer was secured until the police could obtain a search warrant. Once at the police station, the defendant tore up several pieces of paper in his possession. They were retrieved by Sergeant Hunter, and the defendant signed a consent form to allow a search of any items in his possession at the time of his arrest, including a digital camera device he had been carrying.

Later that same day, Detective Donovan interviewed the defendant, who confirmed both his identity and the fact that he had been arrested in Arizona for possession of child pornography. The defendant told Detective Donovan that he had arrived in Boston from Arizona in 2002, he was homeless,[5] he had used the name "Mark Andersen" as an alias, he used computers located at the Boston Public Library to access the Internet,[6] he engaged in sexual conversations with children over the Internet, he may have used threatening language in those conversations, he used the "kidmaker" screen names, and he had permitted

[5]The defendant told Detective Donovan that he lived "on the streets" or stayed at homeless shelters. He also "camped out" with his homeless friends near Fenway Park. The defendant further informed Detective Donovan that he "rarely if ever stay[ed] at any person's home," and that he did not have a car.

[6]In his affidavit, Detective Donovan stated that the defendant had told him that it was not possible to save anything on the Boston Public Library computers. The defendant also told Detective Donovan that "he could have or might have sent threats and pictures via the Internet but did stuff so often that he [did] not remember."

other people to use those screen names. The defendant did not specifically recall communicating with the juvenile, but he conceded that he may have done so. The defendant denied possessing any child pornography, and he further denied owning or possessing a computer or computer storage devices. At the conclusion of the interview, Detective Donovan showed the defendant two sexually explicit photographs of the juvenile. The defendant acknowledged that he had seen one of them, which had been attached to an e-mail, but that he did not know the origin of the e-mail.

On October 5, 2004, Detective Donovan and Sergeant Hunter pieced together the papers that the defendant had torn up when he was arrested. Set forth thereon were various female and male names, telephone numbers, screen names, and Web sites. Detective Donovan believed that this information pertained to young girls with whom the defendant had been in contact. In addition, Detective Donovan pieced together a receipt from Digital Rework Depot, Inc. (Digital Rework), a computer repair shop in the Brighton section of Boston, for the repair of two laptop computers.

On October 8, 2004, Detective Donovan went to Digital Rework to retrieve the two laptop computers, which he then secured and transported to the Boston police department's sexual assault unit evidence room, along with a work receipt for "Mark Andersen." Employees at Digital Rework identified a photograph of the defendant as "Mark Andersen." That same day, Detective Donovan went to Storage USA, a self-storage facility also located in Brighton, where the manager informed him that the defendant had rented storage locker T-816.[7] Detective Donovan asked the manager to secure the storage locker pending the issuance of a search warrant.

On October 12, 2004, Detective Donovan spoke with Michael Hutchins, from whose home in Chelsea one of the telephone calls to the juvenile had originated. Hutchins told Detective

[7]In his affidavit, Detective Donovan stated that the manager at Storage USA told him that the defendant had provided a mailing address of 121 Saint Stephen Street in Boston. However, the manager further informed Detective Donovan that numerous mailings sent to that address had been returned to Storage USA because of an incorrect address.

Donovan that he had known the defendant since the late 1980's, that the defendant used computers and might own as many as five of them, that he had seen the defendant with a laptop computer, that the defendant used computers at the Boston Public Library, and that the defendant had used Hutchins's home telephone on several occasions with a calling card.[8]

On October 20, 2004, Detective Donovan applied for a warrant to search the defendant's storage locker. In addition to the facts already set forth, the affidavit in support of the search warrant described Detective Donovan's knowledge, training, education, and experience during his twenty-seven years as a Boston police officer, six of which were spent conducting and supervising investigations concerning sexual assault, child pornography, and sexual abuse of children. According to Detective Donovan, individuals who buy, produce, trade, or sell child pornography and who sexually molest children generally exhibit similar characteristics and behavioral patterns. Such individuals tend to accumulate and store sexually explicit material depicting children, as well as mementos and identifying information from encounters with children, and they rarely dispose of such materials. Further, Detective Donovan stated that these individuals conceal and protect their collections, using safe deposit boxes and storage facilities, and they often use computers to exchange and store sexually explicit images of children.[9] Based on his experience and specialized training, Detective Donovan determined that the defendant fit within this category of individuals. As such, in Detective Donovan's opinion, the defendant kept child pornography and related materials in his storage locker, and on computers

[8]According to Detective Donovan's affidavit, Hutchins believed that the defendant had a storage locker somewhere, but he did not know its location.

[9]In his affidavit, Detective Donovan stated that electronic data and files are easily transferred, copied, downloaded, or uploaded from one storage medium to another. He further stated that a computer user needs only minimal skills to perform these tasks, and that the defendant had told him that he was computer literate and had computer skills. Based on Detective Donovan's knowledge, a computer user at the Boston Public Library, and at most other libraries, typically cannot save any information to the hard drives of such computers, but needs external storage media, such as floppy disks, compact disks, or camera-type storage devices. Detective Donovan also stated in his affidavit that these types of storage devices can be carried to any location with the person using them, and they can be saved for personal use or to share with others.

and electronic storage devices located in the Boston Public Library and taken from Digital Rework.

An assistant clerk-magistrate in the Brighton Division of the Boston Municipal Court issued the requested warrant for the defendant's storage locker, authorizing the police to search for sexually explicit images of minors, and for computer hardware devices and records related to the storage, solicitation, and transmission of such images. Detective Donovan executed the search warrant on October 25, and the police seized seven computer hard drives, five floppy disks, a cellular telephone, and various documents and additional items.

On November 23, 2004, Detective Donovan applied for a second warrant to search the electronic data on the items seized from the defendant's storage locker, the two laptop computers, the desktop hard drive, and the digital camera taken from the defendant at the time of his arrest. An assistant clerk-magistrate in the Brighton Division of the Boston Municipal Court issued the second warrant, authorizing the police to search for sexually explicit images of minors, and for data and computer files related to the storage, solicitation, and transmission of such images. Detective Donovan executed the second search warrant on November 23, and the police discovered thirty-six images of child pornography on two floppy disks seized from the defendant's storage locker.

On January 11, 2005, a grand jury returned the three indictments against the defendant charging possession of child pornography in violation of G. L. c. 272, § 29C.[10] The defendant filed a consolidated motion to suppress all of the evidence seized pursuant to the two search warrants on the ground that the warrants were not supported by probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276.[11] More specifically, the defendant claimed that the affidavits in support of the search warrants failed to establish

---

[10]The first two indictments pertained to digital pictures contained on two floppy disks seized from the defendant's storage locker, and the third indictment pertained to digital images stored in an account with the electronic mail name "kidmaker4u@hotmail.com."

[11]The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons

the existence of items related to criminal activity, and failed to establish a nexus between the items sought and the places to be searched.

After a nonevidentiary hearing, the judge allowed in part and denied in part the defendant's motion to suppress. The judge first concluded that the information set forth in the affidavit, and the reasonable inferences to be drawn therefrom, supported a finding that the defendant had engaged in criminal activity, namely the violation of G. L. c. 272, § 29C, and that the items sought in the affidavit related to such conduct. However, the judge then concluded that there was insufficient nexus between the defendant's purported criminal activity and the places to be searched. The judge opined that, although there was evidence that the defendant used computers to gain access to children and to child pornography, such computers were located at public libraries, and the police neither observed nor were informed of any activity by the defendant at the storage facility. Further, the judge continued, while the affidavits suggested that the defendant possessed computer equipment and other technical devices, there was no evidence that he used such devices to access the Internet or to store pornographic images of children. The judge stated that the opinions of Detective Donovan pertaining to the general characteristics of child pornography collectors did not create an adequate foundation on which to establish probable cause to believe that evidence of criminal activity would be found in the defendant's storage locker. Consequently, the judge held that because there was insufficient probable cause to search the storage locker, all evidence derived from such search must be suppressed. The judge then opined that the affidavit in support of the search warrant for the two laptop computers seized from Digital Rework suffered from the same factual deficiencies regarding nexus as the warrant for the storage locker. Therefore, the judge held that the police lacked probable cause

---

or things to be seized." Article 14 of the Massachusetts Declaration of Rights requires that all warrants be "previously supported by oath or affirmation" and "accompanied with a special designation of the persons or objects of search, arrest, or seizure." General Laws c. 276, § 2, states that "[s]earch warrants shall designate and describe the building, house, place, vessel or vehicle to be searched and shall particularly describe the property or articles to be searched for."

to search the laptop computers for evidence of criminal activity by the defendant.[12] Finally, with respect to the desktop hard drive seized from the Boston Public Library, the judge concluded that the defendant lacked a legitimate expectation of privacy in that computer, and, therefore, his motion to suppress evidence derived from its search must be denied.

2. *Standard of review.* When reviewing a decision on a motion to suppress, an appellate court accepts the motion judge's findings of fact absent clear error. See *Commonwealth* v. *Jung*, 420 Mass. 675, 681 (1995). "[W]e make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found.' " *Commonwealth* v. *Stoute*, 422 Mass. 782, 783 n.1 (1996), quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), *S.C.*, 398 Mass. 806 (1986).

3. *Discussion.* Under the Fourth Amendment and art. 14, a search warrant may issue only on a showing of probable cause. See *Commonwealth* v. *Valerio*, 449 Mass. 562, 566 (2007). In determining whether probable cause exists for a search warrant to issue, our inquiry "always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328-330 (1980). "To establish probable cause to search, the facts contained in an affidavit, and reasonable inferences that may be drawn from them, must be sufficient for the magistrate to conclude 'that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.' " *Commonwealth* v. *Walker*, 438 Mass. 246, 249 (2002), quoting *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000).

"In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982), quoting *Brinegar* v. *United*

---

[12]In light of the fact that nothing of evidentiary value was obtained from the search of the laptop computers, there was no evidence to be suppressed from this particular search.

*States*, 338 U.S. 160, 175 (1949). See generally J.A. Grasso &
C.M. McEvoy, Suppression Matters Under Massachusetts Law
§ 8-1 (2006). Accordingly, search warrant affidavits are to be
interpreted in a realistic and commonsense manner, see *Com-
monwealth* v. *Donahue, supra,* and should be "read as a whole,
not parsed, severed, and subjected to hypercritical analysis."
*Id.,* quoting *Commonwealth* v. *Blake,* 413 Mass. 823, 827 (1992).
See *Commonwealth* v. *Stewart,* 358 Mass. 747, 751 (1971). The
probable cause necessary to support the issuance of a search
warrant does not require definitive proof of criminal activity.
See *Commonwealth* v. *Spano,* 414 Mass. 178, 184 (1993). Rather,
"[t]he basic question for the magistrate, when evaluating an af-
fidavit supporting an application for the issuance of a search
warrant, is whether there is a substantial basis on which to
conclude that the articles or activity described are *probably* pre-
sent or occurring at the place to be searched" (emphasis added).
*Id.* A reviewing court gives considerable deference to the
magistrate's determination of probable cause, see *Commonwealth*
v. *Upton,* 394 Mass. 363, 377 (1985), and even "the resolution
of doubtful or marginal cases . . . should be largely determined
by the preference to be accorded to warrants." *Commonwealth*
v. *Germain,* 396 Mass. 413, 418 (1985), quoting *United States*
v. *Ventresca,* 380 U.S. 102, 108-109 (1965).

The Commonwealth now contends that Detective Donovan's
affidavits in support of the search warrants established probable
cause to believe that (1) the defendant enticed children for sex
and received child pornography; (2) evidence of these criminal
activities would be found in the only place the defendant could
have kept such evidence, his storage locker; and (3) the electronic
data on items seized from the storage locker, on the two laptop
computers from Digital Rework, and on the desktop hard drive
from the Boston Public Library would include child porno-
graphy. The Commonwealth asserts that the motion judge erred
in finding insufficient nexus between the places to be searched
and the items to be seized. In the Commonwealth's view, a rea-
sonable likelihood that evidence of a crime would be found at a
particular location was sufficient for a warrant properly to issue.
The Commonwealth was not required to present specific evi-
dence, it argues, that the defendant used computers at locations

other than public libraries or that the police were informed of the defendant's activities at the storage facility in order to establish the necessary probable cause. Rather, the Commonwealth continues, the nexus between the items sought and the place to be searched could be based on "normal inferences as to where such items might be kept by the suspect." *Commonwealth* v. *Matias*, 440 Mass. 787, 794 (2004). We agree.

The requisite nexus between the criminal article or activity described in the affidavit and the place to be searched need not be based on direct observation. See *Commonwealth* v. *Donahue*, *supra*; *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). "The nexus may be found in 'the type of crime, the nature of the . . . items [sought], the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [items of the sort sought].' " *Id.*, quoting *United States* v. *Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970). See *Commonwealth* v. *Matias*, *supra* at 793-794 (logical reading of affidavit, based, in part, on contraband found in curbside trash pull from multi-unit building, provided probable cause to conclude that contraband came from defendant's apartment); *Commonwealth* v. *Harmon*, 63 Mass. App. Ct. 456, 461 (2005) ("to pass muster, an application need not establish to a certainty that the items to be seized will be found in the specified location, nor exclude any and all possibility that the items might be found elsewhere"). Here, when the affidavits of Detective Donovan in support of the search warrants are read as a whole, viewed in the context of nexus considerations, we conclude that there was probable cause for the magistrate to issue the warrants.

The lengthy and detailed affidavits of Detective Donovan established that, approximately three years before the events presently at issue, the defendant pleaded guilty in Arizona to charges that involved the possession of child pornography, and a condition of the defendant's probation was that he not use a computer. Nonetheless, the defendant admitted to Detective Donovan that he continued to view child pornography on the Internet, an apparent violation of his probation. "[A] 'person of reasonable caution' would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause." *United*

*States* v. *Wagers*, 452 F.3d 534, 541 (6th Cir.), cert. denied, 127 S. Ct. 596 (2006). The affidavits included facts to show that the defendant used a computer to communicate with the juvenile, threatened the juvenile so that she would send him sexually explicit photographs, and kept lists of Web sites that appeared to relate to child pornography. Detective Donovan stated that he recovered from the defendant scraps of paper on which were listed "photo sharing" Web sites, which allow computer users to upload and share visual images with other people. In Detective Donovan's opinion, the defendant was posting and saving child pornography on these Web sites.

In his affidavits, Detective Donovan stated that, when the defendant was arrested, he tore up several pieces of paper in his possession, including a receipt from Digital Rework for the laptop computers. During his interview with Detective Donovan, the defendant denied owning or possessing a computer or computer storage devices, but the receipt suggested otherwise. A reasonable inference could be drawn that, by tearing up the receipt, the defendant was trying to conceal evidence linking himself to child pornography. Further, Michael Hutchins told Detective Donovan that the defendant used computers, that he had seen a laptop computer in the defendant's possession, and that the defendant might own as many as five computers. Detective Donovan stated in his affidavits that the defendant had told him that it was not possible to save anything on the computers at the Boston Public Library. Given that the defendant was homeless, a significant fact, and that he had rented a storage locker using an address that appeared to be false, a reasonable and commonsense inference could be drawn that the defendant was hiding evidence related to child pornography in the storage locker, the *only* physical space under his control.

Based on his numerous years of training, education, and experience, Detective Donovan opined in his affidavit that individuals who collect child pornography tend to keep this information in various media forms, including computers; rarely dispose of such materials; and take steps to conceal their collections.[13] The magistrate issuing the warrants could reasonably rely on the inference

[13]We note that numerous Federal Circuit Courts of Appeal are of the opinion, similar to the view espoused by Detective Donovan, that "evidence that a

drawn by Detective Donovan that, in light of the other informa-
tion Detective Donovan had obtained, evidence of child por-
nography likely would be found in the defendant's storage locker,
on the laptop computers from Digital Rework, and on the desktop
hard drive from the Boston Public Library. See *Commonwealth*
v. *Kenney*, 449 Mass. 840, 846 (2007). See also *Commonwealth*
v. *Feijoo*, 419 Mass. 486, 498 (1995) (affiant's experience
investigating sexual abuse of children, in part, supported probable
cause); *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199, cert.
denied, 444 U.S. 937 (1979) ("weight must be given to the special
experience of a law enforcement officer who has executed an
affidavit"); *Commonwealth* v. *West*, 55 Mass. App. Ct. 467, 470
(2002). As we have stated, the probable cause necessary to sup-
port the issuance of the search warrants did not require a prima
facie showing that the defendant possessed child pornography,
only a fair probability that evidence of such a crime would be
found in particular locations. See *Commonwealth* v. *Santaliz*, 413
Mass. 238, 241 (1992). Unlike several of the cases relied on by
the defendant, see, e.g., *United States* v. *Rosario*, 918 F. Supp.
524, 531 (D.R.I. 1996), the opinions of Detective Donovan as to
the general characteristics of child pornography collectors did
not, alone, furnish the requisite nexus between the criminal activ-
ity and the places to be searched.

　　Contrary to the defendant's assertion, the Commonwealth is

---

person has visited or subscribed to websites containing child pornography
supports the conclusion that he has likely downloaded, kept, and otherwise
possessed the material." *United States* v. *Wagers*, 452 F.3d 534, 540 (6th Cir.),
cert. denied, 127 S. Ct. 596 (2006). See, e.g., *United States* v. *Watzman*, 486
F.3d 1004, 1008 (7th Cir.), cert. denied, 128 S. Ct. 682 (2007) (collectors of
child pornography tend to hoard and maintain images for years); *United States*
v. *Shields*, 458 F.3d 269, 279 n.7 (3d Cir. 2006) (collectors of child pornography
often store and rarely discard their materials); *United States* v. *Martin*, 426
F.3d 68, 75 (2d Cir. 2005), cert. denied, 547 U.S. 1192 (2006) (common sense
dictates that individuals who join child pornography Web sites would more
than likely download and possess such images); *United States* v. *Riccardi*, 405
F.3d 852, 861 (10th Cir.), cert. denied, 546 U.S. 919 (2005) ("The observation
that images of child pornography are likely to be hoarded by persons interested
in those materials in the privacy of their homes is supported by common sense
and the cases. . . . Because of their illegality and the imprimatur of severe
social stigma such images carry, collectors will want to secret them in secure
places . . ."); *United States* v. *Froman*, 355 F.3d 882, 890-891 (5th Cir.
2004); *United States* v. *Lacy*, 119 F.3d 742, 746 (9th Cir. 1997), cert. denied,
523 U.S. 1101 (1998).

not asking this court to loosen the standard for finding the requisite nexus between the criminal activity described in the affidavit and the place to be searched where computer-based crimes are involved. We recognize that computer technology has rendered the collection, storage, and dissemination of child pornography more amorphous. Nonetheless, all that is required is the consistent application of our well-established approach to analyzing the four corners of an affidavit for determining whether probable cause exists for a search warrant to issue. Here, we conclude that the motion judge was too rigid in his reading of Detective Donovan's affidavits.[14]

4. *Conclusion.* That portion of the judge's order that allowed the defendant's motion to suppress evidence seized from the storage locker and from Digital Rework Depot, Inc., is reversed. This case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

---

[14]In this appeal, the Commonwealth has presented two additional issues for our consideration. First, that the judge should have denied the defendant's motion to suppress because the defendant did not submit his own affidavit, rather than one from his attorney, to establish that he had a privacy interest in the storage locker. Second, that the defendant had a lower expectation of privacy as a probationer, and, consequently, the warrant applications only needed to set forth reasonable suspicion to believe that evidence of criminal activity would be found in the places to be searched. Given our resolution of this case, we decline to address these other issues.