COMMONWEALTH *vs.* REGINALD CLAGON (and six companion cases[1]). May 8, 2013. *Controlled Substances. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Warrant, Affidavit.

The Commonwealth appeals from an order of a judge in the Superior Court allowing Reginald Clagon's and Anthony Gerald's motions to suppress evidence obtained pursuant to a search warrant.[2] The Appeals Court affirmed the order. *Commonwealth* v. *Clagon,* 81 Mass. App. Ct. 1141 (2012). We granted further appellate review. *Commonwealth* v. *Clagon,* 463 Mass. 1105 (2012). At issue is whether the affidavit submitted in support of the search warrant established the required nexus between the alleged criminal activity and the premises to be searched. We conclude that the affidavit in this case did so, and we reverse the allowance of the motions to suppress.

*Standard of review.* "[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day,* 440 Mass. 296, 297 (2003), quoting *Commonwealth* v. *Villela,* 39 Mass. App. Ct. 426, 428 (1995). Probable cause to believe that a suspect has committed a crime is not sufficient to justify a search of the suspect's home; rather, the affidavit and reasonable inferences drawn therefrom "must provide a substantial basis for concluding that evidence connected to the crime will be found on the specified premises." *Commonwealth* v. *Escalera,* 462 Mass. 636, 642 (2012), quoting *Commonwealth* v. *Donahue,* 430 Mass. 710, 712 (2000). Because "[i]n dealing with probable cause . . . we deal with probabilities," *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982), the affidavit "should be 'read as a whole, not parsed, severed, and subjected to hypercritical analysis.' " *Commonwealth* v. *Anthony,* 451 Mass. 59, 69 (2008), quoting *Commonwealth* v. *Donahue, supra.* "A reviewing court gives considerable deference to the magistrate's determination of probable cause, see *Commonwealth* v. *Upton,* 394 Mass. 363, 377 (1985), and even 'the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants.' " *Commonwealth* v. *Anthony, supra,* quoting *Commonwealth* v. *Germain,* 396 Mass. 413, 418 (1985).

*Facts.* Here, the search warrant was issued based on an affidavit of Patrick Byrne, a Boston police officer with experience in drug investigations and arrests. He attested that he was familiar with drug distribution tactics, such as a delivery service whereby a distributor conceals a supply of controlled substances at his residence and conducts sales to individual buyers at other

---

[1]Two against Anthony Gerald and four against Gregory Kimble.

[2]The record indicates that Kimble made an oral request to join the motions to suppress at the hearing on such motions and subsequently filed a motion to that effect.

locations. Turning to the specifics of this case, a confidential informant[3] (identified in the affidavit as "Z") informed Byrne that Gerald was selling heroin in the Forest Hills neighborhood of the Jamaica Plain section of Boston and that Z had purchased heroin from Gerald in the past. Byrne obtained information and a photograph from the registry of motor vehicles, and Z identified the photograph as being that of Gerald. Byrne's affidavit also stated that Gerald did business from a certain address in Jamaica Plain (premises), although he did not state how and when he first obtained this information.[4] The premises are described as a "two (2) story single family attached town house."

Under the supervision of Boston police officers, Z thereafter made three controlled purchases from Gerald in the thirty days before the warrant was issued. In the first, after the officers ensured that Z possessed no money or drugs, Z placed a telephone call to a certain number and was instructed to go to a specific location.[5] Z and the officers went directly to the location, where Z met Gerald and, using money provided by the police, purchased from him a quantity of a tan powder that apparently was heroin.[6] Police officers kept Gerald under surveillance while he went to the premises.[7] The other two controlled purchases proceeded in much the same way, except that, shortly after Z's telephone call, officers observed Gerald leaving the premises and going directly to the meeting location without making any other stops. Each time, Z purchased a quantity of what appeared to be heroin with money supplied by the police. The affidavit also states that a vehicle registered to Gerald's father was seen parked in front of the premises, that Gerald's father was seen getting out of the vehicle and entering the premises using a key, and that Gerald's father has an extensive criminal record involving drug offenses. Based on this information, a warrant was issued to search the premises for heroin and other evidence of its distribution, including paraphernalia, money, and records of drug sales or transactions, as well as evidence showing control or occupancy of the premises.

*Analysis.* Reading the affidavit as a whole and drawing all reasonable inferences therefrom, we conclude that it establishes probable cause to believe that

[3]The motion judge did not address whether the information provided by the confidential informant satisfied the *Aguilar-Spinelli* test. Clagon, who is the only defendant to file an appellate brief in this matter, does not challenge the informant's basis of knowledge or veracity. *Commonwealth* v. *Upton,* 394 Mass. 363, 374-375 (1985), citing *Spinelli* v. *United States,* 393 U.S. 410 (1969), and *Aguilar* v. *Texas,* 378 U.S. 108 (1964). Although the affidavit does not speak of the informant's reliability, the confidential informant's participation in three controlled purchases with Gerald is sufficient to satisfy the test.

[4]In addition, the application itself states that the premises are "occupied by and/or in the possession of: Anthony Gerald."

[5]The affidavit does not identify the location. Byrne attests that drug distributors commonly assign a unique meeting location to each buyer in order to assist in identifying any individual who may have provided information to law enforcement. By not identifying the location where Z met Gerald, the affidavit helps to protect Z's identity.

[6]The affidavit does not state whether any field testing was performed after any of the controlled purchases. In each case, Byrne believed it was heroin due to his training and experience and the type of packaging that was used. There is no challenge to the warrant based on the identity of the substance.

[7]Byrne's affidavit states that Gerald "returned to" the premises, although it does not appear that Gerald was observed leaving the premises prior to this controlled purchase.

evidence connected to the alleged drug offenses would be found at the premises. First, the affidavit suggests that Gerald was an established drug dealer with an ongoing, regular trade. Z essentially described him as a drug dealer, and this description was corroborated by the controlled purchases in which Gerald was able to produce the heroin a short time after receiving Z's telephone call, suggesting that he had a ready supply of heroin and did not need to obtain it from a third party. Second, the affidavit establishes Gerald's connection to the premises. He was seen on two occasions leaving the premises, going directly to a prearranged location, and delivering the substance that the officer believed to be heroin. See *Commonwealth* v. *Escalera, supra* at 643 ("Observations by police of a suspect on multiple occasions leaving his residence and proceeding directly to a prearranged location to sell drugs can support a reasonable inference that the suspect is a drug dealer who stores drugs or packages drugs for resale in his residence"). On a third occasion, he was seen going to the premises after a controlled purchase. Although "the suspect's location immediately prior to the sale is of greater significance to the nexus determination than are his activities after the sale," *id.* at 645, his return to the premises, viewed in the context of the totality of the circumstances set forth in the affidavit, is also some evidence that Gerald was using the premises as a base of operation. That Gerald's father was able to come and go from the premises using a key also indicates Gerald's connection to the premises. Third, the fact that Gerald twice, while under police surveillance, left the premises and went directly to the location of a controlled purchase strongly suggests that he kept his supply of heroin at the premises. Gerald was engaged in a pattern of behavior that was consistent with the delivery service described by Byrne as a common tactic in drug distribution. In addition, given Gerald's apparent status as a regular dealer of heroin and his clear connection to the premises, it was reasonable to infer that other evidence, such as paraphernalia, money, and records connected with his trade, would likely be found there. In these circumstances, we find the affidavit sufficient to establish probable cause to search the premises.

The motion judge and the Appeals Court noted the absence of various details from the affidavit, such as the quantity of the substance sold at each controlled purchase, the time of day, and the amount of time it took Gerald to travel from the premises to the sale. While such details likely would have made the affidavit more compelling, they are largely immaterial to the question whether evidence would probably be found at the premises. In particular, however long it took Gerald to travel to the sale, the fact that he did not stop anywhere en route indicates that he had the substance with him when he left the premises and did not obtain it elsewhere on the way. Admittedly, the affidavit does not state whether Gerald walked or drove to and from the sales. This is somewhat more relevant: if he had driven, there would be a possibility that he kept the substance in the car rather than in the premises. But even this would not by itself be fatal to the existence of probable cause. "A warrant application 'need not establish to a certainty that the items to be seized will be found in the specified location, nor exclude any and all possibility that the items might be found elsewhere. The test is *probable* cause, not certainty.' " *Commonwealth* v. *Escalera, supra* at 646, quoting *Commonwealth* v. *Young*, 77 Mass. App. Ct. 381, 386 (2010). Moreover, even if the substance itself was stored in the car, the other paraphernalia and records of a drug-distribution

enterprise "are far more likely to be located in a residence than in an automobile." *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 290, 299 (2009). Finally, we do not think it fatal that the affidavit does not positively identify the premises as Gerald's personal residence. Although the nexus requirement is an outgrowth of the special constitutional protection afforded to a person's home, see *Commonwealth* v. *Escalera*, *supra* at 643, and cases cited, it does not follow that the affidavit must establish a suspect's legal relationship to the premises. Whether the suspect owns the premises, lives there, or merely conducts business there, the question is whether evidence is likely to be found there. And, as we have discussed, the affidavit establishes that Gerald was making use of the premises, even if it did not establish ownership or residence.

This is a close case, and Byrne's affidavit would have been stronger if it had included more details. Nonetheless, the affidavit was sufficient to establish probable cause to search the premises.

*Order allowing motions to suppress reversed.*

*Teresa K. Anderson*, Assistant District Attorney (*Lauren Greene*, Assistant District Attorney, with her), for the Commonwealth.

*John Fennel*, Committee for Public Counsel Services, for Reginald Clagon.