NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1022

COMMONWEALTH

vs.

DERON C. JONES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Deron C. Jones, appeals from his conviction, after a jury trial in the Superior Court, of trafficking in Oxycodone, G. L. c. 94C, § 32E (c) (1).  He challenges only the denial of his motion to suppress.  Concluding that the search warrant affidavit, which recited numerous controlled purchases where the defendant traveled directly from his apartment building to sell drugs, provided probable cause to search the defendant's apartment for evidence of drug distribution, we affirm.

1.  Standard of review.  When assessing whether a search warrant is supported by probable cause, our inquiry "begins and ends with the 'four corners of the affidavit.'"  Commonwealth v.

O'Day, 440 Mass. 296, 297 (2003), quoting Commonwealth v. Villella, 39 Mass. App. Ct. 426, 428 (1995).  The affidavit "should be 'read as a whole, not parsed, severed, and subjected to hypercritical analysis.'"  Commonwealth v. Clagon, 465 Mass. 1004, 1004 (2013), quoting Commonwealth v. Anthony, 451 Mass. 59, 69 (2008).  We consider the affidavit "in a commonsense and realistic fashion."  Commonwealth v. Dorelas, 473 Mass. 496, 501 (2016), quoting Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011).  We review the search warrant affidavit "de novo to determine whether it establishes probable cause."  Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 79 (2020).

"[T]he probable cause inquiry is 'not a high bar.'"  Commonwealth v. Soto-Suazo, 100 Mass. App. Ct. 460, 464 (2021), quoting Commonwealth v. Guastucci, 486 Mass. 22, 26 (2020).  It is less than a preponderance of the evidence.  See Commonwealth v. Murphy, 95 Mass. App. Ct. 504, 509 (2019).  To satisfy the probable cause requirement, the "affidavit submitted with the search warrant application must provide a 'substantial basis to conclude that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.'"  Commonwealth v. Colina, 495 Mass. 13, 25 (2024), quoting Commonwealth v. Alexis, 481 Mass. 91, 101-102 (2018).

2

2.  Reliability and basis of knowledge.  To establish probable cause based solely on information provided by a confidential informant, the Commonwealth must satisfy the familiar Aguilar-Spinelli test by "demonstrat[ing] some of the underlying circumstances from which (a) the informant gleaned his information (the 'basis of knowledge' test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the 'veracity' test)."  Commonwealth v. Tapia, 463 Mass. 721, 729 (2012), quoting Commonwealth v. Cast, 407 Mass. 891, 896 (1990).  "Independent police corroboration can make up for deficiencies in one or both of these factors." Commonwealth v. Sertyl, 101 Mass. App. Ct. 836, 840 (2022), quoting Commonwealth v. Lyons, 409 Mass. 16, 19 (1990).

First-hand knowledge is enough to satisfy the "basis of knowledge" requirement.  See Commonwealth v. Barbosa, 463 Mass. 116, 134 (2012).  Here, all five confidential informants reported personally buying drugs from the defendant.  Three reported that the defendant used his motor vehicle, two reported that the defendant sold from his apartment, and one reported purchasing drugs in the defendant's apartment.  Such personal knowledge satisfies the basis of knowledge.  See Commonwealth v. Alfonso A., 438 Mass. 372, 374 (2003).

To satisfy the veracity prong, the Commonwealth "needs to show . . . that the [informant] had a demonstrated history of

3

reliability." Commonwealth v. Guardado, 491 Mass. 666, 677, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024), quoting Commonwealth v. Pinto, 476 Mass. 361, 365 (2017). The affidavit established that for only one of the confidential informants. That informant, who reported having purchased drugs from the defendant in the past, also "provided information in the past that ha[d] led to narcotics related arrests as well as the seizure of illegal drugs." An informant's reliability is established by a single instance where that informant provided information that "led to the confiscation of illegal narcotics." Guardado, supra. Cf. Ponte, 97 Mass. App. Ct. at 82 (confidential informant not reliable because of lack of prior history).

Furthermore, "[a] controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant." Commonwealth v. Cruz, 430 Mass. 838, 842 n.2 (2000), quoting Commonwealth v. Warren, 418 Mass. 86, 89 (1994). Here, the six controlled purchases performed by two separate confidential informants and surveilled by police established probable cause under Aguilar-Spinelli to believe that the defendant was dealing drugs. See Commonwealth v. Figueroa, 74 Mass. App. Ct. 784, 787-788 (2009).

The confidential informants' reports of the defendant's residence, automobiles, and contact information was also

4

corroborated by independent police investigation.  The police traced the telephone number the informants provided to the defendant's brother and used that number to contact the defendant to set up controlled purchases.  The address the informants provided matched the one the police had on file for the defendant from a prior investigation.  The police also conducted six controlled purchases from January 2016 to June 2017 where two confidential informants called the defendant and set up a purchase at a prearranged location.  At five of the six purchases, the defendant arrived driving a 2017 Chevrolet Silverado, the same motor vehicle that two confidential informants reported the defendant drove.  For four of the six controlled purchases, police saw the defendant leaving and returning to the same apartment complex that matched the defendant's known address.  This corroborating evidence speaks to the knowledge and reliability of the confidential informants. See Commonwealth v. Arias, 481 Mass. 604, 620 (2019).

3.  Nexus to the defendant's apartment.  Of course, probable cause to believe that the defendant was dealing drugs does not, by itself, mean that the police may search the defendant's home.  To justify a search of the suspect's home, "the affidavit and reasonable inferences drawn therefrom 'must provide a substantial basis for concluding that evidence connected to the crime will be found on the specified

5

premises.'" Clagon, 465 Mass. at 1004, quoting Commonwealth v. Escalera, 462 Mass. 636, 642 (2012).

"Observations by police of a suspect on multiple occasions leaving his residence and proceeding directly to a prearranged location to sell drugs can support a reasonable inference that the suspect is a drug dealer who stores drugs or packages drugs for resale in his residence." Escalera, 462 Mass. at 643. Here, at five of the six controlled purchases, police saw the defendant leave his apartment building and proceed to the controlled purchase. At three of those purchases, the police saw the defendant return to the building after the purchase. See Clagon, 465 Mass. at 1006 ("return to the premises . . . is also some evidence that [the defendant] was using the premises as a base of operation").

In Commonwealth v. Gallagher, 68 Mass. App. Ct. 56, 59 (2007), we determined that there was probable cause to search the defendant's residence after the police saw the defendant twice leave directly from her home to a controlled purchase and return to the premises immediately after the sale. This routine was enough to create a reasonable inference that the "delivery service was based out of her apartment." Id. at 60.

In Escalera, 462 Mass. at 646, the Supreme Judicial Court held that the search of the defendant's home was proper after watching him leave the residence before three suspected drug

6

sales and return home after six drug transactions.  This pattern provided a "substantial basis for concluding that drugs, as well as contraband related to an illegal drug distribution enterprise, would be found in the defendant's apartment" rather than just in the defendant's motor vehicle.  Id.

In Clagon, 465 Mass. at 1006, the Supreme Judicial Court concluded that a search warrant affidavit established probable cause to search a home where, inter alia, the defendant was twice seen going directly from the home to a controlled purchase and once returning to his home after a purchase.  As the court held, "the fact that [the defendant] twice, while under police surveillance, left the premises and went directly to the location of a controlled purchase strongly suggests that he kept his supply of heroin at the premises."  Id.  This pattern reasonably supports the inference that evidence of the defendant's drug distribution could be found in his apartment.

To this, the defendant argues that the size of the apartment building is distinguishable.  We are not persuaded. First, the affidavit described the building as "a multi unit, brick and tan sided building," similar to the description the building in Escalera as a "multi unit building of brick and wood

construction containing individual apartments."[1]  Second, the affidavit contained significant evidence connecting the defendant to the apartment searched.  The officer averred that he knew "[t]hrough past investigations . . . that [the defendant] resides" at the specified apartment.  Another officer had, within the previous six months, responded to the apartment and spoke to the defendant and his girlfriend.  Two confidential informants, including the one who had purchased drugs in the defendant's apartment, provided the apartment number.  As the Supreme Judicial Court stated in Escalera, "there need not be definitive proof that the seller keeps his supply at his residence. . . .  [I]t will suffice if there are some additional facts [that] would support the inference that the supply is probably located there.'"  Escalera, 462 Mass. at 645, quoting 2 W.R. LaFave, Search and Seizure § 3.7(d), at 420-421 (4th ed. 2004).[2]  Here, the information within the four corners of the

---

[1] The defendant makes numerous assertions about the nature of the apartment building complex that find no purchase in the search warrant affidavit and were supported at the suppression hearing only by the unsworn statements of defense counsel.

[2] The defendant also argues that it is more probable that the narcotics would be stored in his motor vehicle rather than the apartment.  Even if the "substance itself was stored in the car," other items related to the distribution enterprise were "'far more likely to be located in the residence.'"  Clagon, 465 Mass. at 1006-1007, quoting Commonwealth v. Rodriguez, 75 Mass. App. Ct. 290, 299 (2009).

8

affidavit established probable cause to believe that there was evidence of drug trafficking in the defendant's apartment.

Finally, Ponte, relied upon by the defendant, is not on point. In Ponte, 97 Mass. App. Ct. at 82-83, we faced the question whether a single "controlled buy within this large multiunit apartment building furnished sufficient corroboration to establish the CI's veracity in combination with the minimal corroboration by the defendant's arraignment record and details provided by the CI." Accord Commonwealth v. Costa, 97 Mass. App. Ct. 902, 903 (2020). Here, at least one of the confidential informants who participated in a controlled purchase had previously established veracity. Furthermore, the question is whether the Commonwealth established a nexus to search the defendant's apartment after six controlled purchases and two confidential informants reported that the defendant sells drugs in his apartment.[3] Ponte's limited exception to the general rule that a proper controlled purchase in an apartment building adequately corroborates the reliability of a confidential informant, see Commonwealth v. Desper, 419 Mass. 163, 169 (1994); Warren, 418 Mass. at 89; Commonwealth v. Monteiro, 93 Mass. App. Ct. 478, 483-485 (2018), is inapplicable for the simple reason that this case does not involve a

_____

[3] One of the confidential informants attested to buying drugs from the defendant in the defendant's apartment.

9

controlled purchase in the defendant's apartment building and thus does not turn on that line of cases.

Judgment affirmed.

By the Court (Neyman,
  Ditkoff & Englander, JJ.[4]),

Clerk

Entered:  October 8, 2025.

---

[4] The panelists are listed in order of seniority.