SUPERIOR COURT 
 
 COMMONWEALTH vs. DAQUAN DOOLEY / COMMONWEALTH vs. TIFFANY SCOTT

 
 Docket:
 21-219 / 21-220
 
 
 Dates:
 December 7, 2023
 
 
 Present:
 Peter B. Krupp
 
 
 County:
 NORFOLK
 

 
 Keywords:
 MEMORANDUM AND ORDER ON MOTIONS TO SUPPRESS
 
 

       Defendants Daquan Dooley (“Dooley”) and Tiffany Scott (“Scott”) (together, “defendants”) are both charged with cocaine trafficking, among other charges, after execution of a search warrant at 18 Atherton Street in Quincy (“18 Atherton”). They separately move to suppress the fruits of that search because they allege the search warrant affidavit did not provide a factual basis to believe evidence of unlawful activity would be found in 18 Atherton. For the following reasons, the motions must be allowed.

DISCUSSION

I. The Relevant Standard

A search warrant is valid if the supporting affidavit provides probable cause to believe that “items . . . related to the criminal activity under investigation . . . reasonably may be expected to be located in the place to be searched” when the warrant issues. Commonwealth v. Rodriguez, 49 Mass. App. Ct. 664, 667 (2000). See also, e.g., Commonwealth v. Andre-Fields,

-1-

98 Mass. App. Ct. 475, 481-486 (2020); Commonwealth v. Lima, 80 Mass. App. Ct. 114, 115- 116 (2011), quoting Commonwealth v. O’Day, 440 Mass. 296, 297, 300 (2003). The affidavit must establish “the requisite nexus” between the objects sought and the place to be searched. Commonwealth v. Medina, 453 Mass. 1011 (2009) (rescript). See Commonwealth v. Foster, 471 Mass. 236, 241-242 (2015).

On a motion to suppress the fruits of a search warrant that challenges the adequacy of the information provided to support issuance of the warrant, the court’s evaluation is limited to the four corners of the affidavit. Commonwealth v. Clagon, 465 Mass. 1004, 1004 (2013) (and cases cited). The court must draw all reasonable inferences and common sense conclusions from the facts therein. Id.; Commonwealth v. Allen, 406 Mass. 575, 578 (1990); Commonwealth v. Burt, 393 Mass. 703, 714 (1985).

II. The Application for the Search Warrants

On March 12, 2021, Quincy Police Det. Sean Glennon applied for search warrants based on a single Affidavit in Support of Application for Search Warrant(s) (“the Affidavit”).[1] Det. Glennon sought a warrant for 20 Atherton Street in Quincy (“20 Atherton”), where Samuel Higginbottom (then 32) (“Higginbottom“) resided,[2] (¶¶ 3, 4, 13). and 18 Atherton, where Dooley (then 31) and Scott resided. (¶¶ 3, 14). The Affidavit focused on 20 Atherton as the locus of drug distribution. It provided the following facts:

--------------------------------------------

[1] The paragraphs of the Affidavit are cited as “(¶ ).” Because most of the factual allegations implicate 20 Atherton, in Section II of this Memorandum and Order I have used bold typeface to highlight the few specific factual references to 18 Atherton or that arguably implicate Dooley or Scott in the drug distribution activities under investigation.

         [2] Higginbottom has been separately indicted. See Commonwealth v. Higginbottom, Norfolk Crim. No. 21-221. The adequacy of the affidavit to support the search warrant for 20 Atherton is not before me.

-2-

A. The Locations to be Searched with Focus on 20 Atherton

18 Atherton and 20 Atherton are separate apartments in a two-family, three-story dwelling. 18 Atherton is on the first floor. 20 Atherton is on the second and third floors. Each apartment has a separate entrance, which is clearly labeled and visible from the street. (¶¶ 13-14, 35-36). I refer herein to the entire structure as “18/20 Atherton.”
      
The Affidavit begins by explaining why the Quincy Police Drug Control Unit (“the DCU”) focused on 20 Atherton. Det. Glennon asserts that during “the . . . several weeks” before applying for the search warrants, the DCU received “numerous complaints of heavy vehicle and foot traffic in and out of 20 Atherton St.” (¶ 3). The Affidavit contains no factual allegation or suggestion that the police observed, or received any complaints about, vehicle activity, foot traffic, or other possible drug activity into or out of 18 Atherton.

B. Historical Information about Higginbottom and Dooley

Higginbottom had been convicted of controlled substances offenses, assaultive conduct, and unlawful firearm possession. (¶¶ 4-5). Among other convictions and entries on his criminal record that are detailed in the Affidavit, Higginbottom was convicted in 2015 in Suffolk Superior Court of assault and battery with a dangerous weapon and unlawful possession of a firearm in connection with a quadruple shooting in Boston for which he was sentenced to 8 years to 8 years and one day in state prison (¶ 5); and was convicted in January 2014 in the United States District Court for the District of Massachusetts of possession with intent to distribute cocaine base for which he was sentenced to 64 months in custody, followed by 72 months of supervised release.[3]

--------------------------------------------

         [3] In or before 2012, Det. Medina, then a Boston Police Officer, spoke with a confidential informant (“CI-1”), who had proven reliable in the past by providing information to law enforcement that led to arrests, seizure of firearms, and convictions in Superior and District Courts. (¶ 10). CI-1 told then-Off. Medina that Higginbottom and his longtime girlfriend, Shakyla Taylor (“Taylor”), were then residing at 56 Franklin Hill Ave., Higginbottom was

-3-

(¶ 4). When Det. Glennon applied for the warrant, Higginbottom was still on federal supervised release. (¶¶ 3, 4, 5).
      
Dooley’s criminal record contained two convictions for distribution of marijuana (one in 2010 and one in 2017, both from the Dorchester District Court) (¶ 6), and a conviction from the Roxbury District Court for unlawful possession of a firearm and carrying a loaded firearm (a case that originated in 2008). (¶ 7). When Det. Glennon applied for the warrant, Dooley had firearms charges pending in Suffolk Superior Court on indictments returned in 2019, and his pretrial release conditions on that case required him to be on GPS monitoring.[4] (¶ 7).
      
The Affidavit asserts that “Higginbottom is known to members of the Quincy Police DCU as being a drug dealer (Crack Cocaine/Fentanyl/Marijuana) and gang member (Franklin Hill Giants)” (¶ 4), and “Dooley is known to members of the Quincy Police DCU as being a drug dealer (Marijuana) and gang member (Franklin Hill Giants).” (¶ 6). These allegations are conclusory insofar as they do not describe the basis for the DCU members’ knowledge. There is no indication that the Quincy police ever conducted any investigation of either man.[5] It is reasonable to infer that each individual’s criminal record printout is the basis for the DCU members’ knowledge about each man’s history of drug dealing. It is reasonable to infer that the

--------------------------------------------

buying large amounts of cocaine and Taylor was cooking it to make crack cocaine, and Higginbottom was distributing the crack to others. CI-1’s information led to Higginbottom’s federal charges and his conviction in 2014. (¶ 11).

         [4] The Affidavit does not refer to efforts by the police to obtain GPS information about Dooley’s whereabouts at any time relevant to the investigation.

         [5] There is one exception. The Affidavit asserts that the Quincy Police arrested Dooley at 18 Atherton on December 19, 2019 and May 11, 2020 on warrants for failure to keep his GPS equipment properly charged, as required by the Suffolk Superior Court. (¶¶ 7, 14). This detail is provided in the affidavit to demonstrate that Dooley resides at 18 Atherton, and not because the Quincy Police learned any investigative detail about Dooley during either of those courtesy arrests.

-4-

information conveyed to DCU by Boston Police Detectives Brian Ball and Dennis Medina, which is disclosed in subsequent paragraphs of the Affidavit, limited as it is, forms the basis for the DCU members’ knowledge that both men were members of the same street gang, the Franklin Hill Giants.
      
At the time of the Affidavit, Det. Ball and Det. Medina were assigned to the Boston Police Department’s Youth Violence Strike Force, and had been for some time. (¶ 8). Dets. Ball and Medina told Det. Glennon that they “have a long history in dealing with the Franklin Hill Giants,” they “are quite familiar with Dooley and Higginbottom,” both Dooley and Higginbottom “are classified as members of the Franklin Hill Giants street gang,” and, based on “their personal knowledge and a review of BPD records,” Dooley and Higginbottom “have been friends and associates for over 20 years and that the two maintain a friendship and common gang affiliation.” (¶ 8). The two Boston detectives also told Det. Glennon that the Franklin Hill Giants are “notoriously dangerous” and have long been involved in firearm violence and the sale of cocaine and other drugs in Boston. Det. Ball told Det. Glennon that Higginbottom “is atop the hierarchical structure of Franklin Hill,” “is the leader of the group,” “has a well earned reputation as a ‘shooter,’” and “is regarded as . . . one who targets, directs and orchestrates firearms violence[ ] on behalf of the gang.” (¶ 9).
      
The Affidavit does not provide any factual basis for these statements attributed to Dets. Ball and Medina. Although one of the statements asserts in conclusory fashion that it is based on Dets. Ball and Medina’s “personal knowledge and a review of BPD records” (¶ 8), most do not. The Affidavit does not explain when, if ever, Det. Ball or Det. Medina had any personal interaction with Higginbottom or Dooley, whether they had ever even seen Higginbottom or Dooley and, if so, when and in what context; or whether their statements were based on

-5-

statements by unnamed informants or on other multiple level hearsay. The Affidavit does not explain what it means for a person to be “classified” as a member of a street gang.

C. Information Obtained in Weeks Before Warrant Application

Within 14 days of applying for the search warrant, Det. Medina told Det. Glennon that he had spoken with CI-1. (¶ 12). Although the Affidavit indicates that Det. Medina had contact with CI-1 prior to Higginbottom’s federal conviction in 2014, see, supra, at 3-4 n.3, it does not explain anything about CI-1’s whereabouts, conduct, or demonstrated continued reliability in the eight or more years since he provided information to law enforcement giving rise to Higginbottom’s federal case. In any event, the Affidavit describes CI-1 as telling Det. Medina that Higginbottom now resides at 20 Atherton (a fact the police were able to corroborate), that CI-1 went to 20 Atherton to buy marijuana and there observed marijuana and crack cocaine packaged for sale, and that Higginbottom is “again purchasing large quantities of Fentanyl and Cocaine as well as marijuana and distributes it to other members of the [Franklin Hill Giants].”6 CI-1 told Det. Medina that during his (CI-1’s) visit to 20 Atherton, Dooley “was also present” at 20 Atherton.7 (¶ 12). According to the Affidavit, CI-1 stated that his visit to 20 Atherton was within 30 days of the application for the warrant. (¶ 12).
      
During early March 2021, DCU members conducted surveillance in the area of 18/20 Atherton. None of that surveillance implicated 18 Atherton. On March 3, 2021, DCU Det. Bryan

--------------------------------------------

         [6] This information was corroborated by the trash pulls described below, see, infra, at 8-9, and to some extent by the limited surveillance on March 3-4, 2021. See, infra, at 6-7.

         [7] There is no suggestion in the Affidavit that CI-1 observed, or said he observed, Dooley (I) witness or participate in CI-1’s purchase of marijuana; (ii) handle or even be in proximity to any marijuana or cocaine packaged for sale, or (iii) assist Higgenbottom in any way in any drug distribution. According to the Affidavit, Dooley was merely “present in the apartment” at some time during CI-1’s visit to 20 Atherton.

-6-

Donovan observed a male enter 20 Atherton and exit a few minutes later holding a small brown bag. (¶ 23). The Affidavit describes multiple law enforcement observations the following day (March 4, 2021), but no observations of activity into or out of 18 Atherton. (¶¶ 24-28). The Affidavit states that, on March 4, 2021, at about 5:51 p.m., DCU Det. Jim Cassidy observed a black male exit “the residence”[8] and enter a vehicle rented by Andre Smith, who had drug and firearm charges on his record and, according to Det. Bell, is a Franklin Hill gang member. (¶ 24). Eighteen minutes later, Det. Cassidy saw a black male “exit the target location” and get into a car rented by Livingston Walker, who had firearm-related charges and who “the Mass Gangs database” listed as a Warren Gardens gang member. (¶ 25). Less than 45 minutes later, while driving by “the target location,” Det. Cassidy saw a man “walking down the stairs of the residence” and enter a vehicle rented by Larissa Andrade, who has ties to people associated with Boston-based street gangs and who Quincy Police had previously arrested for distribution of heroin. (¶ 26). Ten minutes later, Det. Cassidy observed a woman arrive in a rental vehicle and enter “the target location.” Twenty minutes later, the female exited “the target location,” got into the vehicle and drove away. The vehicle was rented by Dyneisha Corbett, who had previously been arraigned for crimes of violence and public order offenses.[9] (¶ 27). Det. Glennon opines that drug dealers often use rental vehicles. (¶ 28).

--------------------------------------------

         [8] Coming, as it does, immediately after paragraph 23’s explicit reference to 20 Atherton, and in light of the fact that the entrance to 18 Atherton is separate from the entrance to 20 Atherton, it appears that the reference in paragraph 24 to “the residence” (and in the subsequent paragraphs about surveillance on March 4, 2021 and referring to either “the residence” or “the target location”) is either a reference to 20 Atherton, or is intentionally vague and noncommittal because the law enforcement officers conducting surveillance on March 4, 2021, were not in a position to observe which apartment’s door was used.

         [9] The police did not tie any of their observations on March 3 or March 4, 2021 to drug distribution. The police did not do any further investigation of the people seen entering or

-7-

The Quincy Police also examined trash “left out by the edge of the road” in front of 18/20 Atherton on two consecutive Thursdays: March 4, 2021, and March 11, 2021. (¶¶ 15-22). In each instance, the trash was collected in a garbage truck which then proceeded to the Quincy Police Department at DCU’s request. (¶¶ 15, 19). The Affidavit is silent as to how the trash was left by the edge of the road – i.e. in barrels, in separate draw-string plastic bags, in tied bags, in open- topped bags. The Affidavit does not establish that the police observed anyone put the trash out by the edge of the road or that the police kept the trash under surveillance after it had been put out by the edge of the road and before the garbage trucks picked it up. The Affidavit also does not indicate how the trash was usually collected or stored at 18/20 Atherton before it was put out by the edge of the road or who had access to the trash bags or barrels, if barrels were in fact used.
      
On both dates, the police retrieved trash in “several bags.”[10] (¶¶ 15, 19). The Affidavit does not identify the contents of each bag retrieved. To the contrary, it does not appear that the police separately accounted for the contents of each bag. Instead, once the garbage truck arrived at the police department, the police “proceeded to search through the bags” and “recovered [various] items of evidentiary value,” which the Affidavit lists, including drug packaging and mailing materials, without regard for which items were found in which bags. Id. Some of the items tested positive for cocaine. Not surprisingly, among the trash pulled from 18/20 Atherton was “[r]esidence paperwork” in the names of Higginbottom, Dooley, and Scott. Id. Although apparently there was no paperwork in Higginbottom’s name recovered on March 4,

--------------------------------------------

leaving 20 Atherton, did not stop any of them, and did not recover any drug evidence from any of them.

         [10] The affidavit does not state that the bags were closed, tied, sealed, or intact when retrieved.

-8-

2021, Det. Glennon stated his belief that “the items found inside the trash” on both dates “are from both 18 Atherton and 20 Atherton.” (¶¶ 18, 22).
      
The sole allegation linking 18 Atherton to any of the drug paraphernalia appears in paragraph 16 of the Affidavit. It states that “two (2) of the plastic sandwich bags and the kilo packaging” recovered during the March 4, 2021 trash pull, all “tested positive for the presumptive presence of cocaine. Of note, amongst the other trash where one of the sandwich bags tested was located was a piece of mail from the Ironworkers District Council of New England addressed to Daquan Dooley of 18 Atherton St., Quincy, MA 02159.”[11] (¶ 16) (emphasis added).

III. Absence of a Defense Affidavit

As a threshold matter, at oral argument on the motions, the Commonwealth contended that Dooley’s motion should be denied because Dooley failed to provide an affidavit under Rule 13(a)(2) of the Massachusetts Rules of Criminal Procedure. Rule 13(a)(2) provides that a pretrial motion must state all grounds on which it is based, identify the particular charges addressed by the motion, and “[i]n addition, an affidavit detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion shall be attached.” Mass. R. Crim. P. 13(a)(2).

While phrased as a requirement – “an affidavit . . . shall be attached,” Mass. R. Crim. P.  13(a)(2) (emphasis added) – an affidavit is only necessary to support a motion if there are facts in dispute. The purpose of Rule 13(a)(2) “is (1) to give the judge considering the motion a

--------------------------------------------

         [11] There is no indication that Dooley was a member of the Ironworkers local union or the Ironworkers District Council. The Affidavit does not specify whether “the piece of mail” was opened or not, was a “junk mail” general mailing, whether “the piece of mail” was actually just an envelope, and whether there was a dated postmark on the piece of mail.

-9-

statement of anticipated evidence, in reliable form, to meet the defendant’s initial burden of establishing facts necessary to support his motion, . . . and (2) to provide the Commonwealth with fair notice of the specific facts relied on in support of the motion set forth in a form . . . which is not readily subject to change.” Commonwealth v. Santosuosso, 23 Mass. App. Ct. 310, 313 (1986). Accord Commonwealth v. Mubdi, 456 Mass. 385, 389 (2010) (affidavit “must be sufficient to enable a judge to determine whether to conduct an evidentiary hearing” and to give the Commonwealth sufficient notice so that it “may determine which witnesses it should call and what evidence it should offer to meet its burden of proving probable cause, reasonable suspicion, or consent”).
      
These purposes are not served by requiring an affidavit to support a motion to suppress the fruits of a search warrant that, as here, simply challenges the adequacy of the factual allegations in the warrant application.[12] The warrant application says what it says, the court does not conduct an evidentiary hearing on such a motion, and no additional facts are to be considered. See, e.g., Commonwealth v. Henley, 488 Mass. 95, 114-115 (2021); Commonwealth v. Hobbs, 482 Mass. 538, 544 (2019); Commonwealth v. Lewis, 103 Mass. App. Ct. 61, 63 (2023); Commonwealth v. Hayes, 102 Mass. App. Ct. 455, 461 (2023). See also, supra, at 1-2. In this context, there is no reason for Dooley to have to provide an affidavit under Rule 13(a)(2) to detail the facts relied upon in support of the motion.[13]

--------------------------------------------

         [12] An affidavit would be required when a defendant files a motion to suppress the fruits of a warrant that turns on the resolution of disputed facts, for example, by challenging the accuracy of, or omissions from, a search warrant affidavit, see, e.g., Franks v. Delaware, 438 U.S. 154, 155-156 (1978); Commonwealth v. Amral, 407 Mass. 511, 522-523 (1990), or the scope of the search conducted after issuance of the warrant. See, e.g., Commonwealth v. Balicki, 436 Mass. 1, 8-9 (2002); Commonwealth v. Santiago, 410 Mass. 737, 740-742 (1991).

         [13] The Commonwealth did not argue that Scott’s motion should be denied for this reason presumably because Scott filed some form of an affidavit. See Defendant’s Affidavit in

-10-

IV. An Absence of Probable Cause

The central question before me is whether Det. Glennon’s affidavit demonstrated “a substantial basis to conclude” on March 12, 2021, that items related to the criminal activity being investigated “reasonably may be expected to be located in” 18 Atherton. Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 81 (2020), quoting Commonwealth v. Long, 482 Mass. 804, 809 (2019) (internal quotations omitted). In evaluating the search warrant affidavit, the affidavit “must be considered in ‘an ordinary, commonsense manner without hypertechnical analysis.’” Commonwealth v. Morin, 478 Mass. 415, 425 (2017), quoting Commonwealth v. Perez-Baez, 410 Mass. 43, 46 (1991).

The information about defendant’s prior criminal convictions, his association with Higginbottom through the Franklin Hill Giants, and the fact that he resided in the first floor apartment in the same two-family building as Higginbottom’s residence, does not provide cause to believe that defendant was engaged in the same criminal activities as Higginbottom, that Higginbottom had access to defendant’s apartment, or that Dooley’s apartment was used in connection with Higginbottom’s criminal activities.[14]

--------------------------------------------

Support of Motion to Suppress Evidence Obtained with Invalid Search Warrant (“Scott’s Affidavit”) (Docket #18 in Norfolk Crim. No. 21-220). The content of Scott’s Affidavit demonstrates the pointlessness of requiring an affidavit in connection with a four-corners challenge to the adequacy of a search warrant affidavit. Scott’s Affidavit contains only seven paragraphs and asserts only facts that are not disputed, see, e.g., Scott’s Affidavit ¶¶ 1 (“I am the defendant”), facts that are plainly wrong or irrelevant, see, e.g., id. ¶ 2 (“[o]n or about March 16, 2016 [sic] Quincy police officers searched . . . my apartment at 18 Atherton”) (emphasis added), and facts the court cannot consider in connection with a four-corners challenge. See, e.g., Id. ¶ 4 (“The trash bins at 18 Atherton Street are not locked”).

         [14] Det. Glennon does not opine based on his training and experience (or based on things he has seen or been taught) that it is common for friends or gang associates involved in drug packaging or distribution to rent contiguous apartments to engage in such activities or that there would be any purpose in the drug distribution business to rent or control contiguous residential units. He offers nothing to suggest that the mere fact that Higginbottom and Dooley

-11-

CI-1 did not implicate 18 Atherton in any way. CI-1 only told the police that he went to 20 Atherton, dealt with Higginbottom, and saw evidence of drug distribution at 20 Atherton. Dooley’s mere presence in 20 Atherton during at least some portion of CI-1’s visit to 20 Atherton does not implicate 18 Atherton in drug distribution activities and does not establish probable cause to believe that evidence of drug distribution activities would be found in 18 Atherton. Notably, the Affidavit does not suggest that Dooley did anything in connection with the drug distribution that CI-1 observed, or even that he was in the same room where the drug distribution occurred or where CI-1 observed drugs packaged for distribution.
      
The Affidavit does not indicate that the police received any complaints about people making frequent visits to 18 Atherton, (cf. ¶ 3), nor did the police conducting surveillance at 18/20 Atherton observe anyone suspiciously enter or exit 18 Atherton. (Cf. ¶¶ 3, 24-28).
      
Much turns on the circumstantial evidence suggested by the carefully written, ambiguous allegations in paragraph 16 of the Affidavit related to a single trash pull. On March 4, 2021, Det. Brian Coen “assumed a surveillance position and observed that the trash was left out by the edge of the road for its normal Thursday pickup” from 18/20 Atherton. (¶ 15). The Affidavit does not say that he observed the trash being put out by the road or whether the trash was in barrels or separate bags. In any event, an empty garbage truck “retrieve[d] the trash (several bags)” and drove to the Quincy Police Department. (¶ 15). According to the paragraphs 15-16 of the Affidavit, Det. Coen and Det. Glennon

retrieved the trash and proceeded to search through the bags. In doing so, we recovered the following items of evidentiary value:
• Numerous sandwich bags with white residue
• Kilo packaging with white residue

--------------------------------------------

know each other, are members of the same Boston street gang, and live in contiguous units that they are both engaged in the drug distribution connected to 20 Atherton and that evidence of such criminal activity would be found in 18 Atherton.

-12-

• Spray foam in the shape of a kilo
• A glove with hardened spray foam
• A USPS box (from San Juan, Puerto Rico) with spray foam attached as well as kilo wrappers
• Heat-sealed bags containing a masking agent
• Packaging with coffee grounds (common masking agent)
• Residence paperwork in the names of Daquan Dooley and Tiffany Scott, both of 18 Atherton St. in Quincy, MA 02169

16. After identifying all of the items found in the trash, Det. Coen utilized a TruNarc Raman Spectrometer to test residue from two (2) of the plastic sandwich bags and the kilo packaging. All three items tested positive for the presumptive presence of cocaine. Of note, amongst the other trash where one of the sandwich bags tested was located was a piece of mail from the Ironworkers District Council of New England addressed to Daquan Dooley of 18 Atherton St., Quincy, MA 02169.

For numerous reasons, this information, even considered with the other information in the Affidavit, was not sufficient to establish probable cause to believe that evidence of drug distribution would be found in 18 Atherton.
      
First, the language of the Affidavit is ambiguous. The Affidavit does not establish how the trash was reviewed, whether the plastic bags were closed or intact, whether the trash had spilled or was mingled, or whether the police analyzed and chronicled the contents of each bag separately. Despite the fact that the police found “[r]esidence paperwork in the names of Daquan Dooley and Tiffany Scott,” the only attempted linkage of anything with either Dooley’s or Scott’s name on it to any drug paraphernalia is to one of the “[n]umerous sandwich bags” with white residue, two of which were tested. (¶ 15). And the linkage is not strong. The Affidavit only says that “amongst the other trash where one of the sandwich bags tested was located was a piece of mail” to Dooley. (¶ 16). I cannot tell from this phrasing – “amongst the other trash” – whether the sandwich bag in question was found next to the mail to Dooley, inside a shopping bag with

-13-

the mail to Dooley, inside the same garbage bag as the mail to Dooley, or was part of the trash through which either Det. Glennon or Det. Coen searched.
      
Even if I were to infer – and such an inference is not self-evident from the factual allegations in the Affidavit – that the trash bags were intact, the trash from each bag was not mingled for analysis with trash from any other bag, and that one of the plastic sandwich bags that tested positive for cocaine was found inside a trash bag with a letter to Dooley (and was not found in a separate bag inside a larger plastic bag where the Dooley letter was located), it does not follow that evidence of drug distribution would be found in a search of 18 Atherton. First, there is no information in the Affidavit about how the letter and plastic bag were deposited into the trash. It is not clear if Higginbottom picked up Dooley’s junk mail and deposited it in a trash bag from 20 Atherton, if Dooley visited Higginbottom and dropped his trash in the bin at 20 Atherton, or if Dooley dropped his trash into a communal bin used by both units.
      
This is not a situation where the police had detailed information about drug distribution being conducted from a particular unit of a multi-unit building and a later trash pull confirmed continuing drug activity from that building. In that situation, which was addressed in Commonwealth v. Matias, 440 Mass. 787 (2004), the court found the trash pull from a multi-unit building corroborated the earlier information. 440 Mass. at 793-795. See also, e.g., Commonwealth v. Lavin, 101 Mass. App. Ct.. 278, 297-298 (2022) (trash pull corroborated other information); Commonwealth v. Montgomery, 87 Mass. App. Ct. 1128, 2015 WL 3551687 at ** 1-2 & n.4 (June 9, 2015) (Rule 1:28 decision) (same); Commonwealth v. Rocha, 83 Mass. App. Ct. 1121, 2013 WL 1234184 at * 2 (Mar. 28, 2013) (Rule 1:28 decision) (same). Cf. Commonwealth v. Smyth, 102 Mass. App. Ct. 1114, 2023 WL 2530760 at ** 2-3 (Mar. 16, 2023) (Rule 23.0 decision) (search warrant affidavit insufficient to justify search where trash pull

-14-

was “corroborative to a degree” of informant’s statement, but probable cause required reliance on informant’s statement, which failed to show informant’s basis of knowledge).
      
Here, in contrast, the trash pull is the only meaningful link between 18 Atherton and the drug distribution activity under investigation and for multiple reasons it is ambiguous. First, as described above, the Affidavit lacks information about how the letter or single sandwich bag was deposited into the trash stream. Second, the evidence of larger scale drug distribution – the kilo packaging, the packaging from Puerto Rico, the heat sealed bags of masking agent, the spray foam – was apparently not found in proximity to, or in the same bag with, the Dooley letter or anything with Scott’s name on it. Third, the single sandwich bag with residue was consistent with personal use of cocaine, not large-scale packaging, sale, or other distribution. Accord Smyth, 2023 WL 2530760 at * 3 (“three ripped plastic bags in the trash,” which smelled “of unburnt marijuana,” and were found with “a letter of standing addressed to the defendant” insufficient to support probable cause to search residence). Nothing contained in the Affidavit suggests or opines otherwise.

ORDER

Daquan Dooley’s Motion to Suppress Physical Evidence Seized from 18 Atherton Street, Quincy, Massachusetts (Docket #21 in Norfolk Crim. No. 21-219), and Tiffany Scott’s Motion to Suppress Evidence Obtained with Invalid Search Warrant (Docket #17 in Norfolk Crim. No. 21-220) are both ALLOWED.