SUPERIOR COURT 
 
 COMMONWEALTH vs. SHAKEEM WARNER AND MELODY WALSH

 
 Docket:
 2081CR0326 / 2081CR0327
 
 
 Dates:
 August 26, 2022
 
 
 Present:
 David A. Deakin
 
 
 County:
 MIDDLESEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS’ MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANTS
 
 

             The co-defendants, Shakeem Warner and Melody Walsh, are charged with a number of offenses relating to allegations that they dealt crack cocaine from a duplex at 28 Cottage Street in Medford. Warner is also charged with firearms offenses and as an armed career criminal under G. L. c. 269, § 10G(a). Much of the evidence against the pair was gathered during a November 8, 2019, search of the residence at 28 Cottage Street.[1] The defendants filed identical, or nearly identical, motions to suppress the evidence recovered during the search of the residence.[2] They each advance two grounds for suppression – that the affidavit in support of the application for the search warrant did not establish probable cause to search the residence and that the affidavit did not include a request for the “no-knock” warrant that was issued. Each motion also seeks a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 164-165 (1978), and Commonwealth v. Amral, 407 Mass. 511, 522-523 (1990), based on purported misrepresentations in the affidavit in
 
--------------------------------------------
 
[1] According to the returns filed in connection with simultaneously executed search warrants for each co-defendant’s person, those searches yielded no evidence.
[2] Warner’s motion to suppress (Paper No. 9) is captioned, “Motion to Suppress Evidence Obtained Pursuant to Search Warrant.” Walsh’s motion (Paper No. 11) is similarly captioned, “Motion to Suppress Evidence Obtained Pursuant to Search Warrant(s).” For convenience, I refer to the motions collectively as, the “motions” or “the motions to suppress.”
 
                                                            -1-
 
support of the application for a search warrant. Neither the requests for a Franks hearing nor the argument that the affidavit failed to establish probable cause to search the residence merit extensive discussion. The validity of the “no-knock” warrant, however, presents a closer and more difficult question. Because I conclude that either the “no-knock” warrant was properly issued or, in any event, that any error in issuing the “no-knock” warrant without a specific request does not warrant suppression of the evidence gathered pursuant to the warrant, the motions to suppress are DENIED.
BACKGROUND[3]
            Sometime before November 2019, police in Medford began receiving complaints from unnamed neighbors about apparent drug dealing in a duplex at 28 Cottage Street in Medford. Medford Police Department personnel undertook an investigation. The investigation began with surveillance of the co-defendants in September 2019. On September 12 and 18, 2019, detectives saw Walsh engage in what they believed were three drug transactions. Each of the transactions either took place outside of, or were connected to, the duplex at 28 Cottage Street. In one of the transactions, police saw Walsh driving a car registered to Warner.
            Also during the investigation, detectives spoke with an unnamed “confidential informant” (CI). Although the confidential informant had not provided information to the Medford Police
 
--------------------------------------------
 
[3] Except as otherwise noted, the facts set out or summarized in this section are taken from the Affidavit of Detective Thomas J. Mattos in Support of an Application for a Search Warrant. See Commonwealth v. Holley, 478 Mass. 508, 521 (2017) (“When considering the sufficiency of a search warrant application, our review ‘begins and ends with the four corners of the affidavit.’”), quoting Commonwealth v. Dorelas, 473 Mass. 496, 500-501 (2016). Some facts in this section, pertaining to the defendants’ request for a hearing under Franks v. Delaware, 438 U.S. 154, 164- 165 (1978), and Commonwealth v. Amral, 407 Mass. 511, 522-523 (1990), are taken from the Detective Mattos’s testimony, given at the hearing on the Motions on August 16, 2022. Detective Mattos’s testimony was taken in a voir dire, the purpose of which was to determine whether the defendants could make the necessary threshold showing to trigger such a hearing. As noted in the text, below, I conclude that they did not make that showing. Additional facts appear in the Discussion section as necessary for context.
 
                                                            -2-
 
Department before, the CI had provided information to other detectives from the Southern Middlesex Regional Drug Task Force. That information had led to arrests and seizures of illegal drugs and cash. The confidential informant told Medford detectives that Warner and Walsh sold crack cocaine and that the confidential informant had participated in drug transactions with each. The confidential informant also told Medford detectives that the co-defendants’ crack cocaine dealing was “originating from a residence located in the West Medford, MA area.” Aff. at ¶ 10.[4] Finally, the confidential informant alerted detectives that Warner always carried a firearm.
            Detectives arranged for the confidential informant to participate in controlled purchases of crack cocaine from Warner and Walsh. The first two such purchases took place no more than sixty days before the issuance of the search warrant. The third purchase took place no more than fourteen days before the warrant’s issuance, and the final purchase took place within seventy-two hours of the issuance of the warrant. Each controlled purchase began with the confidential informant dialing the same telephone number and speaking to a man to arrange the purchase. In each case, the police searched the confidential informant before the purchase to confirm that the confidential informant had no illegal drugs and then provided the confidential informant with the money necessary to complete the transaction. In each case, the confidential informant drove to a location designated by the man during the telephone conversation with the confidential informant. In each instance, detectives followed the confidential informant to the meeting site and watched as the confidential informant met briefly with either Walsh (first and second purchases) or Warner (third and fourth purchases). At the end of each encounter, police then recovered from the confidential informant a substance that subsequently testing confirmed was
 
--------------------------------------------
 
[4] Citations to the Affidavit of Detective Thomas J. Mattos in Support of an Application for a Search Warrant are denoted by the abbreviation, “Aff.,” followed by a paragraph citation.
 
                                                            -3-
 
crack cocaine. In the first purchase, Warner drove Walsh to the location, and she met with the confidential informant. In all but the first purchase, detectives watched as the purported seller left 28 Cottage Street and drove (or, in the case of the first sale, was driven) to the site of the purchase. In each of the four purchases, police watched as the purported seller drove directly from the purchase to 28 Cottage Street.
            On November 8, 2019, Detective Mattos applied for three search warrants: one to search the duplex at 28 Cottage Street, one to search Warner, and one to search Walsh. In his affidavit in support of the applications, Detective Mattos requested permission to execute the search warrant for the duplex at nighttime, but he did not specifically request a “no-knock” warrant. As grounds for his request for permission to execute the search warrant at night, Detective Mattos opined that “a nighttime search is practical for safety purposes, not only to [sic] law enforcement, but for the general public as well.” Aff. at ¶ 37. Detective Mattos noted, specifically, “Warner’s criminal history, which include [sic] convictions for weapons[] offenses.” Id. He also cited the confidential informant’s report that Warner always carried a firearm. Detective Mattos observed that the layout of the duplex at 26-28 Cottage Street would allow its occupants to see police approaching during the daytime. Thus, Detective Mattos observed that execution of the search warrant at nighttime would “afford police quick access to the residence under the cover of darkness.” Id. Finally, Detective Mattos explained that police would “be utilizing a tactical entry team for the reasons mentioned above.” Id.
            The grand jury returned the indictments against the co-defendants on December 4, 2020. The co-defendants were arraigned in this court on February 24, 2021. Walsh filed the Defendant’s Motion to Suppress Evidence Obtained Pursuant to Search Warrant(s) (Paper No. 11) on May 6, 2022, and Warner filed his Motion to Suppress Evidence Obtained Pursuant to
 
                                                            -4-
 
Search Warrant (Paper No. 9) on May 12, 2022. The Commonwealth filed its oppositions to both motions on August 11, 2022. I held a hearing on the motions to suppress on August 16, 2022, and took them under advisement.
DISCUSSION
I.  The Defendants’ Requests for a Franks Hearing
            The defendants maintain that, because of two purported misrepresentations in Mattos’s affidavit in support of the search warrant, they are entitled, under Franks, 438 U.S. at 164-165, and Amral, 407 Mass. at 522-523, to suppression of the evidence seized during the execution of the search warrant. The defendants argue that, in his affidavit, Mattos incorrectly represented the status of a 2016 firearm case against Warner, Commonwealth v. Warner, 1681CR0226 (Mass. Super. Ct.). Mattos wrote – incorrectly, as it turns out – that the case was open. The defendants also fault Mattos for omitting from his affidavit that people other than the co-defendants, including a thirteen-year-old girl, lived at 28 Cottage Street.
            Under Franks and Amral, a defendant is entitled to suppression of evidence seized pursuant to a search warrant if the defendant can demonstrate by a preponderance of the evidence that an affiant applying for a search warrant made one or more intentionally or recklessly false statements in the affidavit and that, after excising the offending statements, the affidavit is insufficient to establish probable cause. See Franks, 438 U.S. at 155-156; see also Commonwealth v. Reynolds, 374 Mass. 142, 149 (1977) (intentional misrepresentation in search warrant affidavit requires suppression).
            The defendants have not presented evidence that Detective Mattos intentionally or recklessly misrepresented any facts in his affidavit. Detective Mattos testified, and I credit, that, sometime before preparing his affidavit, he consulted Warner’s Massachusetts Criminal History
 
                                                            -5-
 
(“BOP”) printout, which indicated that the 2016 firearm case against him was open. Hearing Exhibits 1 and 2 are copies of Warner’s criminal history printout, run on July 1, 2019, and November 12, 2019, respectively. They each list the status of the 2016 firearms case as “O,” which Detective Mattos testified, and the Commonwealth agreed, indicated that the case was open. Detective Mattos cannot be faulted for relying on Warner’s Massachusetts Criminal
History (“BOP”) for the status of a pending case. Defense counsel’s argument that Mattos should have noted that the last date listed for the 2016 firearms case, April 16, 2019, indicated that the BOP was out of date is entirely unpersuasive. That an experienced criminal defense attorney might note that discrepancy in no way suggests that Detective Mattos’s failure to do so was negligent – much less reckless – or, indeed, that he had any reason to look further into the matter.
            The defendants’ contention with respect to the second purported omission is equally unpersuasive. That other people may have lived at 28 Cottage Street at the time that the search warrant was executed is irrelevant to whether the affidavit established probable cause to believe that crack cocaine and/or evidence of drug dealing would be found there. Defense counsel suggests that it is inherently implausible that police – knowing for some weeks or months before seeking the search warrant that an adolescent child lived at 28 Cottage Street, where they had reason to believe drugs and guns were stored – would allow that situation to continue for any length of time. Defense counsel suggests that, because police officers are mandated reporters under G. L. c. 119, § 51A, they were duty-bound to report the situation to the Department of Children and Families (“DCF”) as soon as they became aware that a minor lived at 28 Cottage Street. Putting aside, for the sake of this analysis, the impact that defense counsel’s argument would have on the investigation of narcotics distribution, there is nothing in Detective Mattos’s omission of information about the inhabitants of 28 Cottage Street that suggests that he
 
                                                            -6-
 
intentionally or recklessly misrepresented anything in his affidavit. As it is irrelevant to the probable cause determination who lived at 28 Cottage Street, Detective Mattos’s non-inclusion of that information cannot constitute an intentional or reckless misrepresentation.
            I pause briefly to note that I allowed Detective Mattos to be questioned – in a voir dire – about his preparation of his affidavit to allow the defendants the opportunity to determine whether they could make an initial showing that he mispresented something. I permitted this questioning because, at the time, there was no evidence as to the basis for Detective Mattos’s conclusion that the 2016 firearms case against Warner was open when he prepared the affidavit. The parties have stipulated that, in fact, at the time that Detective Mattos prepared his affidavit, the 2016 firearms case was closed, Warner having been acquitted at a jury trial. Because Mattos had not attached Warner’s BOP to the affidavit – as he wrote in the affidavit that he intended to – I permitted questioning on this topic. At the close of the voir dire, I explained that, based on Detective Mattos’s testimony, I concluded that the defendants had not raised any viable claim that Detective Mattos misrepresented anything in his affidavit.
            Moreover, even if either of the purported misrepresentations were, in fact, misrepresentations, they would not entitle the defendants to a hearing under Franks and Amral. That is because, if – after excising any misrepresentation – the affidavit in support of the search warrant nonetheless establishes probable cause to search a location, a defendant is not necessarily entitled to a hearing. See Commonwealth v. Valdez, 402 Mass. 65, 69-70 (1988), citing Franks, 438 U.S. at 171-172 (no hearing on affiant’s veracity required if, Franks setting aside offending material, search warrant establishes probable cause).
 
                                                            -7-
 
II. Probable Cause to Search the Duplex
            In reviewing a motion to suppress evidence gathered pursuant to a search warrant, the court must determine whether the warrant was supported by probable cause. See Commonwealth v. Perkins, 478 Mass. 97, 102 (2017), citing Commonwealth v. Valerio, 449 Mass. 562, 566 (2007). That determination is made from the “four corners of the [search warrant] affidavit.” Id. (brackets in original), quoting Commonwealth v. O’Day, 440 Mass. 296, 297 (2003). “To establish probable cause, the facts . . . in the warrant affidavit, and the reasonable inferences drawn from them, must be sufficient for the issuing judge to conclude that the police seek items related to criminal activity and that the items described ‘reasonably may be expected to be located in the place to be searched at the time the warrant issues.’” Id., quoting Commonwealth v. Walker, 438 Mass. 246, 249 (2002). In evaluating an affidavit in support of an application for a search warrant, a magistrate may draw reasonable inferences from the facts set out therein. See O’Day, 440 Mass. at 297. Affidavits supporting search warrant applications are reviewed “as a whole and in a common sense fashion.” Commonwealth v. Dorelas, 473 Mass. 496, 501 (2016), quoting Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011). They are not to be “parsed, severed, and subjected to hypercritical analysis.” Id., quoting Commonwealth v. Donahue, 430 Mass. 710, 712 (2000).
            There can be little doubt that the affidavit in this case establishes probable cause to believe that Warner and Walsh were selling crack cocaine and that the distribution was connected to the residence at 28 Cottage Street. The three controlled purchases in which the confidential informant called a man to arrange a purchase of crack cocaine, and in which either Warner or Walsh were seen leaving 28 Cottage Street, going to the site of an arranged purchase, and then returning to 28 Cottage Street established probable cause to believe that crack-cocaine
 
                                                            -8-
 
and/or evidence of its distribution would be found there. This case is controlled, in all material respects, by the holding in Commonwealth v. Clagon, 465 Mass. 1004, 1006 (2013). In that case, the Supreme Judicial Court reasoned that the affidavit in support of the search warrant 
establishe[d] . . . probable cause to believe that evidence connected to the alleged drug offenses would be found at the premises. First, the affidavit suggests that [the defendant] . . . was an established drug dealer with an ongoing, regular trade. [The confidential informant] . . . essentially described him as a drug dealer, and this description was corroborated by the controlled purchases in which [the defendant] . . . was able to produce the heroin a short time after receiving . . . [the confidential informant]’s telephone call, suggesting that he had a ready supply of heroin and did not need to obtain it from a third party. Second, the affidavit establishes . . . [the defendant’s] connection to the premises. He was seen on two occasions leaving the premises, going directly to a prearranged location, and delivering the substance that the officer believed to be heroin. . . . On a third occasion, he was seen going to the premises after a controlled purchase.
Clagon, 465 Mass. at 1005-1006 (internal citation omitted).
            The controlled purchases not only established probable cause in their own right, but they also corroborated the confidential informant’s reliability. In relying on information provided by an informant, a police affiant preparing an affidavit in support of a search warrant application must demonstrate the informant’s “basis of knowledge” and “veracity.” Commonwealth v. Upton, 394 Mass. 363, 373 (1985), citing Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969). See also Commonwealth v. Wilkerson, 486 Mass. 159, 170 (2020) (affirming Aguilar/Spinelli test for reliability of informant information). “Independent police corroboration may make up for deficiencies in one or both prongs of the Aguilar-Spinelli analysis.” Id., citing Commonwealth v. Depiero, 473 Mass. 450, 454 (2016). Controlled purchases conducted by the confidential informant can supply the necessary corroboration. See Clagon, 465 Mass. at 1006.
            The confidential informant’s basis of knowledge – involvement in prior drug transactions with Warner and Walsh – is clearly established in the affidavit. The direct evidence of the
 
                                                            -9-
 
confidential informant’s reliability in the affidavit – prior information that he provided to other detectives resulting in arrests and seizures – is perhaps sufficient, standing alone, to establish the informant’s reliability. Corroborated, as it was, by the controlled purchases, the confidential informant’s information established the confidential informant’s reliability sufficiently to allow police to rely on it.
III. The No-Knock Warrant
            The validity of the “no-knock” warrant issued in this case presents a closer question than either of the defendants’ other two claims. The defendants contend, and the Commonwealth concedes, that Detective Mattos’s affidavit did not include a request for a “no-knock” warrant.[5] The Commonwealth contends, however, that I can infer from the representations in the affidavit concerning officer (and public) safety and from the magistrate’s issuance of a no-knock warrant that Detective Mattos specifically requested one. Although I do not agree that I can infer that Detective Mattos asked the magistrate to issue a “no-knock” warrant, that does not end the inquiry. Because I conclude that Detective Mattos’s affidavit sets out sufficient facts to justify the issuance of a “no-knock” warrant, and because, in any event, any deficiency in the warrant does not warrant suppression in this case, I am not constrained to suppress the evidence.
            Generally, police officers executing a search warrant must knock and announce their presence and purpose. See Commonwealth v. Eller, 66 Mass. App. Ct. 564, 571 (2006), citing Commonwealth v. Cundriff, 382 Mass. 137, 146 (1980), cert. denied, 451 U.S. 973 (1981). A magistrate may set aside the knock-and-announce requirement, however, if “the search warrant affidavit contains sufficient information to establish ‘probable cause to believe that the officers’
 
--------------------------------------------
 
[5] The Commonwealth also concedes that, in his affidavit, Detective Mattos set out no basis for concern that, if the police were required to knock and announce their presence, evidence would be destroyed.
 
                                                            -10-
 
safety would be endangered or the evidence sought would be destroyed.’” Id., quoting Commonwealth v. Ortega, 441 Mass. 170, 176 (2004). Even if police obtain a no-knock warrant, they are required to “make a ‘threshold reappraisal’ of the actual circumstances they face before they may disregard the [knock-and-announce] requirement.” Commonwealth v. Jimenez, 438 Mass. 213, 217 (2002), citing, inter alia, Commonwealth v. Scalise, 387 Mass. 413, 421 (1982). Violation of the knock-and-announce rule does not automatically result in suppression. See Commonwealth v. Perez, 87 Mass. App. Ct. 278, 283 (2015). Rather, in deciding whether suppression is warranted as a result of a violation, a court must assess “‘the degree to which the violation undermined the . . . governing rule of law,’ and . . . the extent to which exclusion will serve as a deterrent in the future.” Id., quoting Commonwealth v. Gomes, 408 Mass. 43, 46 (1990).[6]
            At the threshold, I note that Detective Mattos’s affidavit sets out sufficient probable cause to believe that knocking and announcing their presence before executing the search warrant would have put the police officers executing the search warrant in danger. As noted in the affidavit, Warner had twice previously been convicted of unlawful firearm possession, although each conviction was well over a decade old. Additionally, however, the confidential informant told police that Warner always carried a gun. Corroborated by the controlled buys, see above, the confidential informant’s information was sufficient to put the police in real fear for their safety if they knocked and announced their presence before entering the premises.
 
--------------------------------------------
 
[6] The Federal Rule is different. Under Federal precedent, suppression is not a remedy for a violation of the Federal knock-and-announce rule, which is codified in 18 U.S.C. § 3109. See United States v. Garcia-Hernandez, 659 F.3d 108, 111-112 (1st Cir. 2011), citing Hudson v. Michigan, 547 U.S. 586, 591 (2006).
 
                                                            -11-
 
            Additionally, I conclude that the execution contemplated in Detective Mattos’s affidavit is clearly based on an apprehension of potential danger from an armed Warner and an effort to protect the officers executing the warrant from that danger. In the paragraph in which he seeks permission to execute the search warrant at night, Detective Mattos notes not only the basis to conclude that Warner likely would be armed at the time of the execution but also that executing the search warrant at night “will afford police quick access to the residence under the cover of darkness.” Aff. at ¶ 37. Detective Mattos also notes his intention to use “a tactical entry team” in executing the warrant. Id. Although it is certainly conceivable that Detective Mattos might have concluded that authorization to execute the warrant at night was sufficient to protect the officers executing the warrant, it is nonetheless also true that the magistrate was warranted in concluding that the representations in the affidavit were sufficient to justify a “no-knock” warrant – even if Detective Mattos did not specifically request it.
            This leaves only the question whether Detective Mattos’s failure to request a no-knock warrant in his affidavit invalidates the search per se. The parties have not drawn my attention to any authority that addresses whether a “no-knock” warrant issued without an express request from the affiant is valid. Commonwealth v. Jimenez, 53 Mass. App. Ct. 902, 903 (2001), holds that, in order to search a premises without first knocking and announcing their presence, police must have been both “properly authorized initially . . . and justified at the time of the warrant’s execution.” It does not address, however, the question of the validity of a “no-knock” warrant issued based on a sufficient showing of probable cause but without a specific request.[7]
 
--------------------------------------------
 
            [7] Federal cases provide some instructive reasoning. They are not controlling, however, in large part because the United States Constitution does not require that police seek authorization from a magistrate before executing a search warrant without knocking. In Richards v. Wisconsin, 520 U.S. 385, 396 n. 7 (1997), the United States Supreme Court observed, in dicta, that “a magistrate’s decision not to authorize a no-knock entry should not be interpreted to remove . . .
 
                                                            -12-
 
            Guiding my decision in this case is the rule, cited above, that violation of the knock-and- announce rule does not automatically result in suppression. See Perez, 87 Mass. App. Ct. at 283. Looking, as I must, to whether “‘the degree to which the violation undermined the . . . governing rule of law,’ and . . . the extent to which exclusion will serve as a deterrent in the future,” id., quoting Gomes, 408 Mass. at 46, I conclude that suppression is not warranted. Detective
Mattos’s affidavit sets out a sufficient basis to conclude that Warner was likely to be armed at the time of the execution; his description of the proposed execution involves the use of a special tactical team to enter the residence; and the magistrate authorized a “no-knock” entry. Thus, even if the “no-knock” warrant was improperly authorized because of the absence of a specific request, the “no-knock” entry in this case did not undermine the rule of law, and there is therefore no significant deterrent interest in suppression.
 
--------------------------------------------
 
[police] officers’ authority to exercise independent judgment concerning the wisdom of a no- knock entry at the time the warrant is being executed.”
            In United States v. Hernandez, 352 F.Supp.2d 1190 (D. Kansas 2003), a Federal District Court judge addressed a closely analogous situation to this case. In that case, police did not apply for a no-knock warrant, and the warrant issued without a “no-knock” provision. When police arrived at the premises to be searched, however, they encountered a man outside. They approached him from the front and rear and ordered him to the ground. This caused a commotion that police were afraid would alert people inside the premises to their presence. They, therefore, entered the residence without knocking. Citing Richards, the judge in Hernandez reasoned that, regardless of whether police have been issued a “no-knock” warrant, the determination of whether an entry without knocking and announcing must be made at the time of entry. See Hernandez, 352 F.Supp.2d at 1193. Under the Fourth Amendment to the United States Constitution, at least, the analysis is one of reasonableness. See id. Thus, because the judge in Hernandez concluded that the officers’ actions in that case were reasonable, there was no basis to suppress the evidence collected in the search.
 
                                                            -13-
 
CONCLUSION AND ORDER
            For the foregoing reasons, the defendants’ Motions to Suppress are DENIED.
/s/David A. Deakin
Associate Justice
August 26, 2022